Rexford A. Johnson, ISB No. 7882
Christopher Cuneo, ISB No. 8557
Jordan L. Stott, ISB No. 9820
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, ID  83702
Telephone: (208) 562-4900
Facsimile:  (208) 562-4901
Email: rjohnson@parsonsbehle.com
            ccuneo@parsonsbehle.com
            jstott@parsonsbehle.com

Attorneys for Denison's Publishing, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| DENISON'S PUBLISHING, INC., <br><br> Plaintiff, <br><br> v. <br><br> STAY ALERT MAGAZINE LLC, <br><br> Defendant. | Case No. <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Denison's Publishing, Inc. ("DPI"), by and through its undersigned counsel of record, brings this action against Stay Alert Magazine LLC ("Stay Alert"), alleging as follows:

**NATURE OF THE ACTION**

1. This is an action arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and for substantial and related claims under the statutory and common laws of the State of Idaho.  Since 1987, DPI, or its predecessors-in-interest, have used the trademark ALERT

(the "Mark") in connection with the publication of magazines and have established substantial goodwill in the Mark.

2. DPI is also the owner of pending U.S. Trademark Application Serial No. 97682044 for ALERT for use with, among other things, "Printed publications, namely, a magazine featuring information about drug and alcohol abuse prevention."

3. Stay Alert was formed by prior employees of DPI's predecessor-in-interest with the intention of capitalizing upon the Mark and diverting revenue from DPI.

4. This action arises out of Stay Alert's attempts to misappropriate and exploit the Mark and the goodwill associated therewith. This action further arises of out Stay Alert's false and misleading statements to DPI's customers that Stay Alert was continuing the ALERT magazine.

## PARTIES

5. Plaintiff is an Idaho corporation having a principal place of business in Boise, Idaho.

6. Defendant is an Idaho limited liability company having a principal place of business in Garden City, Idaho.

## JURISDICTION AND VENUE

7. This is an action arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as Idaho Code § 48-603.

8. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because it involves substantial claims under the federal Lanham Act.

9. This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367, because these claims are so related to DPI's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10. Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(c)(2). All parties are residents of the State of Idaho and have a principal place of business in Ada County, Idaho and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS GIVING RISE TO THIS ACTION

### *History and Mission of ALERT Magazine*

11. ALERT Magazine has been in publication since 1987 and has been instrumental in reducing teen drug and alcohol abuse through prevention education.

12. ALERT Magazine is a semi-annual magazine focused on issues pertaining to teenagers. While the content of ALERT Magazine focuses on drug and alcohol abuse prevention and education, it also features emerging trends affecting teens, including, but not limited to, teen mental health, vaping, cyberbullying, risky social media fads, and dating violence.

13. ALERT Magazine is distributed free of charge to high schools.

14. ALERT Magazine is published in at least 10 states, including Alaska, Colorado, Idaho, Minnesota, Montana, North Dakota, Oregon, South Dakota, Washington, and Wyoming.

15. Because ALERT Magazine is distributed to high schools free of charge, DPI relies upon advertisers and sponsors to directly support DPI's drug and alcohol abuse prevention and education efforts. Furthermore, advertising dollars are used to support publications and fund scholarships within the state of the advertiser.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

*Publication of ALERT Magazine*

16. DPI is a publisher based in Boise, Idaho and publishes more than 15 unique publications each year.

17. DPI has been publishing ALERT Magazine since Spring 2022.

18. DPI owns valid and subsisting common law rights in the ALERT trademark.

19. The Mark has been used in commerce continuously since 1987 by DPI or its predecessors-in-interest.

20. The Mark is distinctive to both the consuming public and DPI's trade.

21. On August 1, 2021, DPI added ALERT magazine to its portfolio by purchasing all rights and interest in the Mark and the magazine, as well as its customer and advertising lists, from its predecessor-in interest Golden West Publications LLC ("Golden West").

22. DPI continues to build upon the efforts of its predecessors-in-interest and further the mission of ALERT Magazine by disseminating reliable information about drug and alcohol abuse prevention and education.

23. Because of the continuous and exclusive use of the ALERT trademark in commerce by DPI and its predecessors-in-interest for almost 35 years, the Mark has acquired incalculable distinction, reputation, and goodwill belonging exclusively to DPI.

*Stay Alert's Unauthorized Use of the ALERT Brand*

24. Without authorization from DPI, Stay Alert has used and continues to use a trade name that is confusingly similar to DPI's Mark.

25. Stay Alert has falsely held itself out as the successor-in-interest to Golden West and as the new publisher of ALERT magazine.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

26. On or about September 24, 2021, Stay Alert was organized with the state of Idaho by Krystal Search. Upon information and belief, Ms. Search is the current Manager of Stay Alert.

27. Ms. Search was previously employed by Golden West to, among other things, solicit advertisers for ALERT Magazine.

28. Upon information and belief, Ms. Search is the daughter of Heidi Barker.

29. Ms. Barker was previously employed by Golden West to, among other things, solicit advertisers for ALERT Magazine.

30. Upon information and belief, Ms. Search and Ms. Barker now operate Stay Alert and solicit advertisers for Stay Alert's magazine.

31. Recently, Stay Alert launched the website https://stayalertmagazine.com/ for "Magazine Prevention Education For High School Kids." On its website, https://stayalertmagazine.com/about-us-and-our-goal, Stay Alert claims to provide a Stay Alert Magazine to local high schools and includes information on, among other things, bullying, teen relationship abuse, and drug and alcohol abuse. Stay Alert also claims to award scholarships to graduating seniors

32. The Stay Alert Magazine and ALERT Magazine are disseminated in the same channels, have the same target audience, and have the same pool of customers for advertising.

33. Upon information and belief, to date, Stay Alert has not actually published its own magazine.

34. Upon information and belief, Stay Alert, by and through the actions of Ms. Search and Ms. Barker, have used customer and advertising lists obtained through their employment at

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

Golden West to lure customers of DPI's ALERT magazine into mistakenly paying Stay Alert for advertising intended to be advertised in ALERT magazine.

35. Stay Alert, by and through the actions of Ms. Search and Ms. Barker, have diverted advertisers from DPI's ALERT magazine to Stay Alert's magazine by means of deception and through unauthorized use of DPI's Mark.

36. Upon information and belief, Ms. Search and Ms. Barker have leveraged their prior positions as saleswomen for ALERT Magazine to deceive advertisers into believing that payments sent to Ms. Search and/or Ms. Barker are still being directed to advertising in ALERT Magazine.

37. Stay Alert's actions have caused actual confusion in the marketplace. DPI's customers for advertising have paid money to Stay Alert under the mistaken belief that Stay Alert is the publisher of, or associated with, DPI's ALERT Magazine.

38. Further, Stay Alert has spread misinformation to cause confusion so that it can financially capitalize upon that confusion.

39. Stay Alert has sent invoices to DPI's customers requesting that the customers' "[p]lease update our new billing information," implying that Stay Alert is the same company with whom the customers had previously advertised.

40. Stay Alert falsely told at least one of DPI's customers that DPI was no longer in business and that Stay Alert was "continuing the same magazine."

41. On or about October 21, 2022, Stay Alert invoiced another DPI customer for advertising. The customer paid the invoice believing it was for advertising in ALERT Magazine, but soon thereafter stopped payment on the check when it discovered that Stay Alert was not associated with ALERT Magazine. In response to the stopped payment, Stay Alert falsely told

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

the customer that DPI "is NOT Alert" and that it was "a completely different company misleading people."

42. On or about November 7, 2022, another of DPI's customers notified DPI that it had also received an invoice from Stay Alert and had paid the invoice mistakenly believing the advertising to be associated with ALERT Magazine because the invoice amount and stated mission were the same as in prior years. Angered, the customer indicated that it would cease sponsorship to either Stay Alert or DPI because Stay Alert's actions "duped" them into making donations and created confusion in their mind about DPI's ALERT Magazine.

43. Furthermore, Stay Alert has received and deposited payments made out to "Alert Magazine," despite not being associated with ALERT Magazine. For instance, upon information and belief, on September 21, 2022, Stay Alert cashed a check made out to "Alert Magazine."

44. Upon receipt of an invoice from DPI for advertising in ALERT Magazine, another of DPI's customers notified DPI that its accounting department had already issued payment for those services. Although the customer intended to advertise in ALERT Magazine, the customer had previously and mistakenly paid an invoice received from Stay Alert. As a result, DPI did not receive payment from the customer even though the customer intended to advertise in the ALERT magazine and not the Stay Alert Magazine.

45. Stay Alert's name is confusingly similar to DPI's ALERT trademark and has caused substantial confusion, damage, and irreparable harm to DPI, and it threatens to continue to irreparably harm DPI. Stay Alert's unauthorized actions have caused, and are likely to continue to cause confusion, mistake, and deception of DPI's customers, potential customers, and members of the general public. Stay Alert's use of a business name confusingly similar to

**COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

DPI's Mark has led, and is likely to lead, individuals to mistakenly conclude that Stay Alert is affiliated with, or is, DPI.

46.     Stay Alert's unauthorized actions have caused DPI to spend money, time, and other resources to investigate and mitigate the effects of Stay Alert's actions.

47.     Upon information and belief, Stay Alert's unauthorized actions have cost DPI at least $10,000 in lost advertising revenue and potentially more than $50,000 in lost advertising revenue.

48.     In May and June 2022, DPI sent cease and desist letters to Stay Alert requesting that Stay Alert stop its illegal activities.  Instead, Stay Alert has continued to send out misleading invoices and capitalize upon the confusion it has purposefully created.

## FIRST CLAIM FOR RELIEF
### False Designation Of Origin, 15 U.S.C. § 1125

49.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

50.     ALERT is a valid trademark owned by DPI and entitled to protection.

51.     Stay Alert's use of Stay Alert Magazine is confusingly similar to DPI's ALERT mark used in connection with the publication of magazines.

52.     Stay Alert's unauthorized use in commerce of the ALERT mark in association with magazines about drug and alcohol abuse prevention and education as alleged herein will likely deceive consumers as to the origin, source, sponsorship, and/or affiliation of Stay Alert's products, and will likely cause consumers to believe, contrary to fact, that Stay Alert's magazine is authorized, endorsed, and/or sponsored by DPI, or that DPI is in some way affiliated with or sponsored by Stay Alert.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

53. Stay Alert's unauthorized use in commerce of the ALERT mark has caused actual confusion by consumers.

54. Stay Alert's conduct therefore constitutes false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55. Upon information and belief, Stay Alert commits the foregoing acts with full knowledge of DPI's rights in the ALERT Mark and with the intent to cause confusion and trade on DPI's goodwill and reputation.

56. Stay Alert's conduct will cause immediate and irreparable harm and injury to DPI, and to its goodwill and reputation, and will continue to both damage DPI and confuse the public unless enjoined by this court. DPI has no adequate remedy at law.  DPI is thus entitled to preliminary and permanent injunctive relief under Section 34 of the Lanham Act, 15 U.S.C. § 1116.

57. As a result of Stay Alert's infringement, DPI has suffered damages including loss of revenue. DPI is entitled to an award of actual damages, Stay Alert's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF
### Unfair Methods and Practices in Violation of Idaho Code § 48-603

58. The preceding paragraphs are incorporated by reference as if fully set forth herein.

59. Stay Alert's wrongful acts described above constitute unfair methods and practices in violation of Idaho Code § 48-603 as they include passing off goods or services as those of another and are deceptive and likely to cause confusion or misunderstanding as to affiliation, connection, or association with, or certification by DPI.

60. Stay Alert's acts of unfair methods and practices have caused and will continue to cause DPI irreparable harm. DPI has no adequate remedy at law for Stay Alert's unfair methods and practices.

61. DPI is entitled to judgment enjoining and restraining Stay Alert from engaging in further acts of infringement and unfair competition.

## DEMAND FOR JURY TRIAL

DPI hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

## PRAYER FOR RELIEF

WHEREFORE, DPI prays for entry of judgment against Stay Alert, as follows:

1. A preliminary and permanent injunction enjoining Stay Alert, its employees, agents, officers, directors, attorneys, representatives, successors, affiliates, parents, subsidiaries, licensees, and assigns, and all those in active concert or participation with any of them, from the following acts:

    a. Using or attempting to use in the United States: (1) the name or mark ALERT or any other name, mark, or designation that imitates or is confusingly similar to said mark, alone or in combination with any other mark(s), designation(s), word(s), term(s), and/or design(s); (2) any false description or representation or any other thing calculated or likely to cause confusion or mistake in the public mind or to deceive the public into the belief that Stay Alert or its products or services are connected to DPI or that Stay Alert's products and services come from or are approved or

COMPLAINT AND DEMAND FOR JURY TRIAL - 10

    endorsed by DPI; or (3) any name or mark which is likely to injure the business reputation of DPI; or

  b. Otherwise engaging in acts, either directly or through other entities, of infringement, unfair competition, false designation of origin or unfair business practices;

2. That judgment be entered in favor of DPI on all claims for relief raised in the Complaint;

3. An award of damages in an amount to be determined at trial;

4. An award of treble damages as provided by the Lanham Act, 15 U.S.C. § 1117(b);

5. An award of attorney's fees and costs;

6. That judgment and order be entered awarding to DPI all other relief to which DPI may prove itself to be entitled; and

7. For such other and further relief as the Court deems just and proper.

DATED THIS 18th day of November, 2022.

          PARSONS BEHLE & LATIMER


          By */s/ Jordan L. Stott*
            Rexford A. Johnson
            Christopher Cuneo
            Jordan L. Stott

          *Attorneys for Denison's Publishing, Inc.*

**COMPLAINT AND DEMAND FOR JURY TRIAL - 11**